IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA G. MATTHEWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-01212-E |
| | § | |
| UNITED HEALTHCARE SERVICES, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United HealthCare Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 13).  For reasons that follow, the Motion is **GRANTED**.

### Background

This is a suit for benefits under a health insurance policy.  Plaintiff Lisa G. Matthews filed this lawsuit in state court against United HealthCare Services (UHS) and several other defendants.  UHS filed a special appearance and removed the case to federal court on the basis of diversity jurisdiction.  Plaintiff filed a motion to remand, which was denied.  The Court ruled that all Defendants except UHS were improperly joined.

In her complaint, Plaintiff alleges that she is a resident of Collin County, Texas, and has a temporary residence in Panama.  She alleges that UHS is a Minnesota corporation and that the Court has jurisdiction over UHS because "it has engaged in business" in Texas within the meaning of the Texas Long Arm statute.  She further alleges that UHS has purposefully established minimum contacts with Texas and the exercise of personal jurisdiction over UHS

1

will not offend traditional notions of fair play and substantial justice.  According to the complaint, UHS has maintained purposeful, systematic, and continuous contacts with Texas.

As for the merits of her suit, Plaintiff alleges that, in January 2017, she purchased a single member United HealthCare health insurance policy through WorldWide Medical Assurance, Ltd. Corporation, an affiliate of UHS.  In her application, Plaintiff disclosed certain medical conditions, including a previous surgery on her C5 disc.  Magda Crespo, "WorldWide's and [UHS's] agent," informed Plaintiff that WorldWide approved her policy, but was going to exclude her entire spine from coverage.  Plaintiff agreed only to an exclusion of coverage as to her cervical spine.  WorldWide later informed her that it would exclude from coverage only the cervical spine for a period of two years after the policy issuance date of February 1, 2017.  Plaintiff alleges she would not have purchased her policy if it excluded her lumbar or thoracic spine.  Plaintiff was issued a United HealthCare insurance card and was directed to submit claims to UHS.  UHS provided her with a benefit guide that stated, "UnitedHealthcare has one of the largest single proprietary networks with over 900,000 doctors and health care professionals and over 5,600 hospitals."

In May 2017, Plaintiff fell twice, suffering lower back and leg pain.  She saw a doctor in Panama who ordered an MRI.  Because her back continued to hurt, she made an appointment with a doctor in Addison, Texas.  That doctor diagnosed her with lumbar spinal stenosis and other conditions.  He recommended surgery that would involve two separate procedures on the same day.  UHS preauthorized the spinal surgery and hospitalization. Plaintiff alleges that under her policy and verification of benefits letter, once she paid a $3,000 deductible and related co-pay amounts and 30% coinsurance, she would be covered

2

at 100%.  She asserts her verification of benefits letter says she has an insurance policy "administered by [WorldWide] in conjunction with United Healthcare."

The complaint further alleges that Plaintiff underwent surgery on October 13, 2017, at Methodist Hospital in Dallas, Texas.  In January 2018, WorldWide notified Plaintiff that her claim related to the surgery was denied due to her pre-existing conditions.  Although Plaintiff later received correspondence from WorldWide stating that it would pay invoices related to her surgery, she alleges that UHS has failed to pay for the majority of her medical care.

Plaintiff asserts claims against UHS for breach of the insurance contract, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act.   She also seeks a declaratory judgment that UHS is legally obligated to pay her medical providers for claims related to her surgery, among other things.

UHS moves to dismiss the claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  UHS is a Minnesota corporation with its principal place of business in Minneapolis.  UHS contends it is not subject to general or specific jurisdiction in Texas.

## Applicable Law

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant, though she need only make a prima facie case at the Rule 12(b)(2) stage.  *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 778 (5th Cir. 2018).  The Court accepts the plaintiff's uncontroverted, nonconclusory factual allegations as true and resolves all controverted allegations in the plaintiff's favor.  *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d

3

190, 193 (5th Cir. 2019). The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, and other recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

A federal court sitting in diversity in Texas may exercise personal jurisdiction over a foreign defendant if permitted by (1) the Texas long-arm statute, and (2) the due process clause of the Fourteenth Amendment. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 249 (5th Cir. 2019). Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis. *Id.* Federal due process is satisfied if two requirements are met: (1) the nonresident purposely availed itself of the benefits and protections of the forum State by establishing "minimum contacts" with the State; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 249–50. The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 250 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985)). A defendant's "minimum contacts" may give rise to either general or specific jurisdiction. *Id.*

Supreme Court decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Ca.*, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 1780 (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. *Id.* at 1780. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *Id.* (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014)).  General jurisdiction exists when a nonresident defendant's contacts with the forum State are continuous and systematic.  *Sangha v. Navig8 ShipManagement Private, Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

General jurisdiction is difficult to establish and requires extensive contacts between a defendant and forum.  *Id.* at 101–02.  A corporation is "at home" in its place of incorporation and its principal place of business.  *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017).  In an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State.  *Id.*  The general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.  *Daimler*, 571 U.S. at 139 n.20.  It calls instead for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.  *Id.*  A corporation that operates in many places can scarcely be deemed at home in all of them.  *Id.*  Otherwise, "at home" would be synonymous with "doing business."  *Id.*

Specific jurisdiction is very different. *Bristol-Myers*, 137 S. Ct. at 1780*.*  For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id.*  In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear,*

564 U.S. at 919). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

## Analysis

1.  General Jurisdiction

UHS argues that there is no basis for asserting general jurisdiction over it in Texas.  It is a Minnesota corporation with its principal place of business in Minnesota.  UHS asserts that Plaintiff's conclusory allegations that the company is subject to general jurisdiction because it does business in Texas and has systematic and continuous contacts in the State are insufficient.

Plaintiff filed a response to the motion and attached a declaration from herself and her attorney, as well as a copy of her Texas driver's license, her United HealthCare insurance card and information from United HealthCare titled, "Getting the Most From Your Health Care Coverage." She has also included many pages of claims documents related to her surgery.  Plaintiff responds that UHS deliberately sought to benefit by availing itself of the jurisdiction of this State by forming contractual relationships with Plaintiff's medical providers and enrolling Plaintiff in a plan with providers located in Texas.  Plaintiff also relies on the fact that UHS sought and obtained permission from the Texas Secretary of State to conduct business here and has a registered agent for service of process here.  Plaintiff maintains this shows UHS engaged in continuous and systematic contacts in Texas.

The Fifth Circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008).  Plaintiff has not demonstrated that this is an exceptional case such that

UHS, a Minnesota corporation, is also "at home" in Texas.  She has not alleged or provided evidence of the extent of UHS's corporate activities.  Her conclusory allegations about UHS's continuous and systematic contacts are insufficient.  So is the fact that UHS has a registered agent for service of process in Texas. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181–82 (5th Cir. 1992).   The Court concludes Plaintiff has not established that UHS is subject to general jurisdiction.

2.  Specific Jurisdiction

UHS also argues it is not subject to specific jurisdiction in Texas.  It asserts that Plaintiff cannot show that her claims arise from UHS's contacts in the State.  It argues she obtained the insurance policy in Panama, where she lived at the time, from WorldWide, a Panamanian company.  Her later decision to travel to Texas for treatment cannot form the basis for jurisdiction.  UHS asserts that even if it had contracted with a Texas resident, that would be insufficient to establish jurisdiction.

Plaintiff responds that UHS deliberately committed acts which were purposefully directed at Texas and that her claims arise from these contacts.  Plaintiff contends she is a United States citizen and Texas resident.  In making the decision to purchase the policy, she relied upon WorldWide's representations that UHS was "the PPO provider for medical services in the State of Texas, and that UHS would administer and pay her claims."  In support of her argument that specific jurisdiction exists, Plaintiff cites the fact that UHS sent her 9 claims summaries notifying her that it had processed 91 claims from her medical providers in the Dallas area.  Further, she alleges that UHS communicated with Methodist Hospital on a routine basis about Plaintiff's treatment and claims.

Plaintiff has not directed this Court to allegations or evidence that sets out a prima facie case of specific jurisdiction.  While living in Panama, Plaintiff filled out an application for insurance with WorldWide, a Panamanian company.   On the application, Plaintiff provided an address in Panama.   After suffering an injury in Panama, Plaintiff consulted a Texas doctor, who recommended and performed surgery in Texas.  Plaintiff argues that she did not purchase her insurance policy just from a Panamanian entity.  She asserts she purchased it from WorldWide, as an agent of UHS, and UHS, and in doing so, relied upon representations made by WorldWide that "UHS was the PPO provider for medical services in the State of Texas, and that UHS would administer and pay her claims."  The record includes a 2013 agreement between WorldWide and UHS under which UHS agreed to administer and implement WorldWide insurance policies.  The provider network was described as a network of participating U.S. health care providers who agree to provide health services to covered persons.  The network "shall be available in the fifty United States and the District of Columbia."

Although not binding authority, the Court considers *Perez v. Pan American Life Insurance Company* persuasive.  96 F.3d 1442 (5th Cir. 1996) (not designated for publication).  In that case, Guatemalan plaintiffs purchased a health insurance policy from Seguros, a Guatemalan corporation that was a subsidiary of Pan American Life Insurance Company.  The plaintiffs sought medical treatment for their son in Houston, Texas.  After Seguros refused to pay the plaintiffs' claims, they sued Seguros and Pan American in Texas.  The district court granted Seguros's motion to dismiss for lack of personal jurisdiction, and the plaintiffs appealed.  They argued that Seguros approved their application to go to

8

Houston for medical care for their son.  The Fifth Circuit found that Seguros did not have minimum contacts with Texas.  The insurance policy at issue was solicited and issued in Guatemala.  *Id.* at *2.  The worldwide coverage language in the policy, and the fact that a Seguros representative approved treatment in Texas was not enough to subject the company to personal jurisdiction in Texas.  *Id.*; *see also Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 615 F.3d 364 (5th Cir. 2010); *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, No. H-08-1870, 2009 WL 47125, at *5 (S.D. Tex. Jan. 6, 2009) ("The weight of authority, however, holds that an out-of-state insurer does not subject itself to personal jurisdiction in a forum state by verifying coverage for treatment of the insured in that state and paying some of the bills for that treatment.").

The contacts on which Plaintiff relies—processing her claims for treatment at providers in Texas and communicating with a Texas hospital—arose from her unilateral decision to seek medical treatment in Texas, not from any affirmative decision by UHS. Further, even if the Court accepts that UHS contracted with a Texas resident, it is well established that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.  *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).  Plaintiff has not shown that Minnesota corporation UHS purposefully directed its activities toward Texas.  Therefore, the contacts on which Plaintiff relies are insufficient to create specific jurisdiction.  Accordingly, the Court grants

UHS's motion and dismisses Plaintiff's claims against it without prejudice.

**SO ORDERED.**

Signed September 9, 2020.

ADA BROWN
UNITED STATES DISTRICT JUDGE